# IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

MICHAEL CHAPMAN

*Plaintiff-Appellant*,

*v.*

JEFFERSON S. DUNN, ET AL.,

*Defendant-Appellees.*

Appeal from the United States District Court
for the Middle District of Alabama

No. 2:20-cv-00007-WKW-CSC

## APPELLANT'S BRIEF

Alexis Swartz
LEHOTSKY KELLER COHN LLP
408 W. 11th St., 5th Floor
Austin, TX 78701
alexis@lkcfirm.com
(512)693-8350

*Counsel for Plaintiff-Appellant*

**N**O **21-11132**

*M*ICHAEL *C*HAPMAN V. *J*EFFERSON *D*UNN*, ET A*L

<u>**C**ERTIFICATE OF **I**NTERESTED **P**ERSONS</u>
<u>AND **C**ORPORATE **D**ISCLOSURE **S**TATEMENT</u>

Appellant/Plaintiff Michael Chapman, pursuant to FRAP 26.1 and

11th Circuit Rule 26.1-1, 26.1-2, and 26.1-3, files this Certificate of Interested

Persons and Corporate Disclosure Statement:

1.  Alabama Department of Corrections, Legal Division, 301 South

    Ripley Street, Montgomery, AL 36130;

2.  Chapman, Michael (Appellant);

3.  Coody, Charles S. (U.S. Magistrate Court Judge for the Middle

    District of Alabama);

4.  Cooks, Mary (Appellee);

5.  Copeland, Michelle Sagers (Appellee);

6.  Corizon, LLC (Appellee);

7.  Dunn, Jefferson (Appellee);

8.  Hamm, John Q. (Commissioner – State of Alabama Department

    of Corrections);

9.   Huffaker, Jr., R. Austin (Reassigned U.S. District Court Judge

     for the Middle District of Alabama);

10.  Lehotsky Keller Cohn LLP (Law firm of Alexis Swartz, counsel

     for Appellant);

11.  Naglich, Ruth (Appellee);

12.  Piggott, Philip (Counsel for Appellees, Corizon, LLC,

     Commissioner Jefferson Dunn, Associate Commissioner Ruth

     Naglich, and Warden Mary Cooks);

13.  Swartz, Alexis (Counsel for Appellant);

14.  Thompson, Myron H. (Reassigned U.S. District Court Judge for

     the Middle District of Alabama);

15.  Tehum Care Services, Inc. (Appellee);

16.  Watkins, William K. (Previously assigned U.S. District Court

     Judge for the Middle District of Alabama);

17.  Waugh, Charlie (Appellee).

**No 21-11132**

*MICHAEL CHAPMAN V. JEFFERSON DUNN, ET AL*

<u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rule 26.1-1, undersigned counsel for Plaintiff-Appellant certifies that none of the above-listed entities are publicly traded, and no publicly traded entity owns 10% or more of their stock.

<u>*/s/ Alexis Swartz*</u>
Alexis Swartz

## STATEMENT REGARDING ORAL ARGUMENT

Plaintiff-Appellant respectfully requests oral argument. This appeal raises novel questions of law regarding this Court's jurisdiction over appeals from a partial final judgment entered pursuant to Federal Rule of Civil Procedure 54(b) and tolling of the statute of limitations for a deliberate indifference claim. Additionally, the District Court record is procedurally complex. Appellant's counsel believes that oral argument will assist this Court in elucidating the District Court record and the questions of law presented here for review.

# TABLE OF CONTENTS

Jurisdictional Statement.................................................................................1

    I.    District Court Jurisdiction ........................................................1

    II.   Appellate Court Jurisdiction ....................................................1

Statement of the Issues ..............................................................................4

Statement of the Case.................................................................................6

    I.    Statement of Facts ...................................................................7

        A. Chapman suffers an untreated ear infection in 2017, and, in
        January 2018, is found unresponsive and subsequently treated
        for mastoiditis, a ruptured ear drum, and a brain abscess. .........8

        B. Chapman has cataract surgery on his left eye but continues to
        be denied cataract surgery on his right eye. ...............................11

    II.   Course of Proceedings and Disposition Below................................12

        A. Chapman sues defendants pursuant to 42 U.S.C. § 1983, and the
        Magistrate Judge screens his complaints. ...................................12

        B. The Magistrate Judge orders defendants to produce
        special reports and medical records, and defendants partially
        comply. .............................................................................13

        C. The Magistrate Judge issues an R&R ...........................................18

        D. The District Court stays the case as to defendant
        Corizon, partially adopts the R&R, and enters final judgment
        pursuant to Federal Rule of Civil Procedure 54(b). ...................18

        E. Chapman's objections to defendants' submissions are entered
        on the docket after entry of Rule 54(b) judgment. .....................20

        F. Chapman timely files a notice of appeal, and this Court issues a
        jurisdictional question.................................................................21

    III.  Standard of Review..............................................................21

Summary of the Argument .............................................................................23

Argument........................................................................................................27

I.      This Court has jurisdiction over this appeal because there
        was no just reason to delay the entry of final judgment as to the
        individual defendants. ....................................................................27

        A. The District Court's judgment was an ultimate disposition of all
           claims against all individual defendants. ....................................28

        B. This is the unusual case where Rule 54(b) final judgment
           alleviates the hardship associated with an indeterminate delay
           caused by Corizon's bankruptcy proceedings. ...........................29

        C. It is no issue that the District Court did not state express
           reasons for finding "no just reason for delay" because those
           reasons are obvious from the record............................................32

II.     Chapman's claims against defendant Waugh were not barred by
        the statute of limitations. ....................................................................34

        A. The statute of limitations began to run no earlier than January
           1, 2018, when Chapman could have reasonably become aware
           of his injuries ...................................................................................35

        B. Alternatively, the statute of limitations was also equitably
           tolled because a stroke prevented Chapman from timely filing
           his complaint. ..................................................................................39

III.    Disputes of fact precluded summary judgment as
        to defendant Waugh. ..........................................................................40

        A. The Magistrate Judge erred by only considering the evidence
           submitted by defendant Waugh and by making credibility
           determinations. ...............................................................................42

        B. The Magistrate Judge erroneously applied a gross negligence
           standard, contra *Farmer*. ...............................................................45

        C. A dispute of fact exists regarding *Farmer*'s subjective prong,
           precluding summary judgment for defendant Waugh. ............46

IV.    Refusal to perform cataract surgery on Chapman's right eye
        constitutes deliberate indifference. ....................................................50

V.     The Magistrate Judge and District Court erred by granting
        summary judgment without giving a reasonable time to respond
        and in otherwise giving an incarcerated pro se litigant an
        inadequate amount of time to respond to orders............................53

Conclusion.........................................................................................................57

**Page(s)**

## Cases

*Adams v. United States,*
173 F.3d 1339 (11th Cir. 1999) .......................................................12

*Aldridge v. Montgomery,*
753 F.2d 970 (11th Cir. 1985) ..........................................................47

*Bonner v. City of Prichard,*
661 F.2d 1206 (11th Cir. 1981) ........................................................36

*Brown v. Hughes,*
894 F.2d 1533 (11th Cir. 1990) ........................................................47

*Chapter 7 Trustee v. Gate Gourmet, Inc.,*
683 F.3d 1249 (11th Cir. 2012) ........................................................42

*Colwell v. Bannister,*
763 F.3d 1060 (9th Cir. 2014) .....................................................51, 52

*Diaz v. United States,*
165 F.3d 1337 (11th Cir.1999) .........................................................35

*Ebrahimi v. City of Huntsville Bd. of Educ.,*
114 F.3d 162 (11th Cir. 1997) ..............................22, 27, 29, 32, 33

*Farmer v. Brennan,*
511 U.S. 825 (1994)...........................24, 41, 45, 46, 47, 49, 50

*Fedance v. Harris,*
1 F.4th 1278 (11th Cir. 2021) ..........................................................39

*Garvey v. Vaughn,*
993 F.2d 776 (11th Cir. 1993) ..........................................................56

*Gilmore v. Hodges,*
    738 F.3d 266 (11th Cir. 2013) .......................................................41

*Griffith v. Wainwright,*
    772 F.2d 822 (11th Cir. 1985) ........................................................54

*Harris v. Thigpen,*
    941 F.2d 1495 (11th Cir. 1991) ......................................................46

*Harrison v. Digital Health Plan,*
    183 F.3d 1235 (11th Cir. 1999) .....................................................22

*Haygood v. Auto-Owners Ins. Co.,*
    995 F.2d 1512 (11th Cir. 1993) .....................................................44

*Herron v. Beck,*
    693 F.2d 125 (11th Cir. 1982) .......................................................56

*Hill v. Dekalb Reg'l Youth Det. Ctr.,*
    40 F.3d 1176 (11th Cir. 1994) .......................................................48

*Houston v. Lack,*
    487 U.S. 266 (1988) .........................................................................2

*Hughes v. Noble,*
    295 F.2d 495 (5th Cir. 1961) ........................................................48

*Kearse v. Secretary, Fla. Dep't of Corr.,*
    669 F.3d 1197 (11th Cir. 2011) .....................................................46

*Lloyd Noland Found., Inc. v. Tenet Health Care Corp.,*
    483 F.3d 773 (11th Cir. 2007) .........................................21, 27, 28

*Mandel v. Doe,*
    888 F.2d 783 (11th Cir. 1989) ......................................................49

*Marbury v. Warden,*
    936 F.3d 1227 (11th Cir. 2019) ....................................................49

*McCullough v. United States,*
607 F.3d 1355 (11th Cir. 2010) .................................................................35, 37

*McDonough v. Smith,*
139 S. Ct. 2149 (2019) ....................................................................................34

*McElligott v. Foley,*
182 F.3d 1248 (11th Cir. 1999) .......................................................................49

*McNair v. Allen,*
515 F.3d 1168 (11th Cir. 2008) .......................................................................34

*Messerschmidt v. Millender,*
565 U.S. 535 (2012) ........................................................................................53

*Nance v. Comm'r, Ga. Dep't of Corr.,*
59 F.4th 1149 (11th Cir. 2023) .......................................................................34

*Reyes v. Maschmeier,*
446 F.3d 1199 (11th Cir. 2006) .......................................................................22

*Stoner v. Graddick,*
751 F.2d 1535 (11th Cir. 1985) .......................................................................31

*Tannenbaum v. United States,*
148 F.3d 1262 (11th Cir. 1998) .......................................................................38

*Thomas v. Bryant,*
614 F.3d 1288 (11th Cir. 2010) .......................................................................49

*Villarreal v. R.J. Reynolds Tobacco Co.,*
839 F.3d 958 (11th Cir. 2016) .........................................................................39

*Waits v. United States,*
611 F.2d 550 (5th Cir. 1980) ...........................................................................35

*Young v. City of Palm Bay,*
358 F.3d 859 (11th Cir. 2004) .........................................................................22

*Ex Parte Young*,
    209 U.S. 123 (1908) ............................................................. 52

**Statutes**

28 U.S.C. § 1291 ....................................................................... 3

28 U.S.C. § 1331 ....................................................................... 1

42 U.S.C. § 1983 ................................................. 1, 12, 22, 34, 39

Ala. Code § 6-2-38 ................................................................ 34

**Other Authorities**

Fed. R. Civ. P. 54 ................................ 2, 3, 4, 18, 20, 21, 22, 26, 27, 28, 29, 31, 33

Fed. R. Civ. P. 56 .................................................................. 53

Penn Medicine, *Mastoiditis*, https://perma.cc/E8Y2-7APZ ............................. 10

United States Courts, *Chapter 11 – Bankruptcy Basics*,
    https://perma.cc/2Z2E-QMJV ........................................ 29

<u>J</u>URISDICTIONAL <u>S</u>TATEMENT

## I.     District Court Jurisdiction

The District Court had subject matter jurisdiction pursuant to 28 U.S.C.

§ 1331.  Plaintiff-appellant Michael Chapman asserted Eighth Amendment

claims against multiple individual defendants, state correctional defendants,

and one corporate defendant pursuant to 42 U.S.C. § 1983.

## II.    Appellate Court Jurisdiction

The basis for this Court's jurisdiction is at issue in this appeal.  On

February 9, 2023, the Magistrate Judge issued a Report and

Recommendation (R&R) recommending that summary judgment be granted

in favor of all defendants and that Chapman's case be dismissed with

prejudice.  Dkt. 56, p.30.[1]  On February 28, 2023, the corporate defendant

Tehum Care Services, Inc. d/b/a Corizon Health, Inc./Corizon, LLC

("Corizon") notified the District Court that it had entered Chapter 11

bankruptcy proceedings and that an automatic stay was in place applicable

---

[1] Page numbers for District Court docket entries refer to the ECF page
numbers.

to all judicial proceedings against it.  Dkt. 57, p.1-2.[2]  On March 7, 2023, the District Court stayed the proceedings as to Corizon only.  Dkt. 59, p.1-3.

On March 7, 2023, the District Court adopted the R&R as to Chapman's claims against all individual and correctional defendants.  Dkt. 60, p.2.  The District Court stayed ruling on summary judgment as to Corizon pursuant to the automatic stay.  *Id*.  The District Court, finding "no just reason for delay," entered partial final judgment pursuant to Federal Rule of Civil Procedure 54(b) in favor of defendants John Q. Hamm, in his official capacity; Jefferson S. Dunn, in his individual capacity; Ruth Naglich; Mary Cooks; Michele Sagers Copeland; and Charlie Waugh.  *Id*. at 2-3; Dkt. 61.  Chapman timely handed over a notice of appeal to prison officials for mailing on March 14, 2023.  Dkt. 64, p.4.; *Houston v. Lack*, 487 U.S. 266, 276 (1988).

---

[2] On March 7, 2023, the District Court updated the case caption to appropriately reflect that the corporate defendant's correct name was "Tehum Care Services, Inc. d/b/a Corizon Health, Inc./Corizon, LLC." Dkt. 58.  Because the filings and R&R generally refer to the corporate defendant as "Corizon," this Brief will do so as well.

On May 2, 2023, this Court issued a jurisdictional question asking the parties to brief whether the District Court's certification of final judgment under Rule 54(b) was proper.  ECF No. 4-2.[3]  This Court is carrying that question with the case.  ECF No. 20-2.

For the reasons more fully set forth below, this Court has jurisdiction to review the partial final judgment pursuant to 28 U.S.C. § 1291.

---

[3] "Dkt." references refer to District Court docket entries.  "ECF" references refer to docket entries in this appeal.

1.      Whether this Court has jurisdiction over this appeal, where the

District Court exercised its discretion to enter final judgment

pursuant to Federal Rule of Civil Procedure 54(b) as to the

individual defendants and where the claim as to the sole

corporate defendant had been stayed indefinitely pending

Chapter 11 bankruptcy proceedings.

2.      Whether the District Court failed to properly calculate when the

statute of limitations as to the claim against defendant Charlie

Waugh began to run, where Chapman could not reasonably

have become aware of his injuries due to defendant Waugh's

deliberate indifference prior to January 1, 2018.

3.      Whether the District Court erred in granting summary judgment

to defendant Waugh, where the District Court improperly made

credibility determinations and where a dispute of fact existed as

to defendant Waugh's deliberate indifference.

4.     Whether the District Court erred in granting summary judgment

to defendant Hamm in his official capacity, where the refusal to

provide Chapman surgery for his right eye cataract violates the

Eighth Amendment.

5.     Whether the District Court erred by granting summary

judgment without giving Chapman a reasonable opportunity to

respond and in otherwise failing to give an incarcerated pro se

litigant an adequate amount of time to respond to orders.

## STATEMENT OF THE CASE

Prison officials were deliberately indifferent to Michael Chapman's medical needs in violation of the Eighth Amendment. Chapman suffered from a routine ear infection that went untreated for nearly three months because prison officials ignored Chapman's sick calls and grievances. When he finally did see a Nurse Practitioner, she adamantly refused to provide him any treatment for his ear infection. As a result, nearly five months later, Chapman passed out, seized, and required surgery and treatment for mastoiditis, a ruptured ear drum, and a brain abscess. On top of this, Chapman has been suffering for *years* from a cataract in his right eye and needs surgery. His prison refuses to perform this surgery. A jury should have heard Chapman's claims on these issues as to two defendants—Nurse Charlie Waugh, sued in her individual capacity and who refused to treat Chapman for an ear infection, and John Q. Hamm, who is the current Commissioner of the Alabama Department of Corrections (ADOC) and was sued in his official capacity for injunctive relief.

Only by committing several errors did the District Court grant summary judgment. First, it miscalculated the statute of limitations on Chapman's claims as to defendant Charlie Waugh. Second, also as to claims against Waugh, it improperly resolved credibility determinations at summary judgment and applied the wrong legal standard for evaluating a deliberate indifference claim. Third, it overlooked disputes of fact Chapman had raised regarding treatment of his right eye and entirely failed to consider that Chapman had sought damages *and* injunctive relief. Finally, the District Court provided Chapman with a wholly inadequate amount of time to respond to orders. Chapman maintains that he timely filed multiple objections and responses that were never entered on the docket and, consequently, never considered by the District Court.

## I.    Statement of Facts

Michael Chapman is an indigent Alabama state inmate. During the facts relevant to this appeal, Mr. Chapman was incarcerated at the Draper Correctional Facility in Elmore, Alabama. Dkt. 56, p.4. Defendant Corizon

held the contract with ADOC to provide medical services to inmates from November 1, 2007, through March 31, 2018.  Dkt. 13-1, p.1.

### A. Chapman suffers an untreated ear infection in 2017, and, in January 2018, is found unresponsive and subsequently treated for mastoiditis, a ruptured ear drum, and a brain abscess.

On June 16, 2017, Chapman submitted a sick call request complaining of an infection in both ears.  Dkt. 53-1, p.113.  According to Chapman, Defendant Copeland was responsible for responding to sick calls and grievances and ignored this and subsequent requests for treatment for his ear infection.  Dkt. 43, p.10.  On June 21, 2017, Chapman submitted another sick call request for his ear infection.  Dkt. 53-1, p.114.  By July of 2017, Chapman had still not been seen by a medical professional and had submitted multiple medical grievances regarding his ear infection.  Dkt. 53-1, p.115-16.  On August 10, 2017, Chapman had a chronic care visit for another issue with Corizon employee and Nurse Practitioner, defendant Charlie Waugh.  Dkts. 53-1, p.3; 55-1, p.6.

The parties dispute what occurred during Chapman's August 10, 2017, visit with Waugh.  Chapman alleges that he showed her clear evidence that

he had an ear infection, including a Q-tip of puss that had drained from his ears, and that he explained that puss and fluid had been draining from his ears at night.  Dkt. 53-1, p.117.  Waugh claims she saw no indication of an ear infection.  Dkt. 55-1, p.3.

In September 2017, Chapman submitted two more sick call requests complaining about his continuing ear infection and asking to see a doctor. Dkt. 53-1, p.117-18.  His requests stated that puss and fluid were draining from his ears.  *Id*.  He also filed two medical grievances with Corizon in September 2017.  Dkt. 53-1, p.119-20.  Receiving no response to those medical grievances, he filed a medical grievance appeal on October 10, 2017, but he received no response to that appeal.  Dkt.  53-1, p.121.  Between October 2017 and November 2017, Chapman wrote to Warden Mary Cooks multiple times complaining of the lack of response to his sick call requests and medical grievances, but received no response.  Dkt. 53-1, p.122-25.

On January 1, 2018, prison staff found Chapman unresponsive in the bathroom.  Dkt. 55-1, p.7.  Chapman then began having seizures and had an elevated heart rate.  *Id*.  Emergency medical personnel transported Chapman

to Jackson Hospital in Montgomery, Alabama. *Id*. He was subsequently transferred to UAB Hospital in Birmingham, Alabama, where he was diagnosed with an untreated sinus infection that resulted in a bilateral ear infection and ruptured ear drum. Dkt. 53-1, p.61. He was further diagnosed with mastoiditis and a 2.4 cm abscess in his superficial posterior right temporal lobe. *Id*. p.61, 66.[4] On January 2, 2018, Chapman underwent a mastoidectomy, and, the following day, January 3, 2018, underwent a second surgery to remove the brain abscess. Dkt. 53-1, p.66. Chapman's medical records indicate that an "[e]valuation at the corrective facility indicated that he probably had sinus infection and was managed symptomatically" and that "[h]e did not receive any antibiotics while at the corrective facility." Dkt. 53-1, p.78.

---

[4] Mastoiditis is an infection of the mastoid bone of the skull. The mastoid bone is located behind the ear. Mastoiditis is often caused by a middle ear infection. *See* Penn Medicine, *Mastoiditis*, https://perma.cc/E8Y2-7APZ.

## B. Chapman has cataract surgery on his left eye but continues to be denied cataract surgery on his right eye.

In October 2016, Chapman underwent cataract surgery for his left eye. Dkt. 53-1, p.5-6.  He has also been diagnosed with cataract on his right eye. *Id*. at 3.  An ophthalmologist Dr. Sebastian Heersink has recommended that Chapman have surgery in his right eye.  *Id*. at 10.  However, Chapman has never received surgery on his right eye because Defendant Copeland ignored Chapman's grievances regarding his eye surgery and refused to schedule the surgery.  Dkt. 10-1, p.1.  Throughout 2015-206, Chapman put in grievances regarding Defendant Copeland's refusal to schedule eye surgery for his right eye.   Dkts. 10-1, p.1-2; 43, p.6.  It is Wexford Health Sources, Inc.'s ("Wexford") position that, because Chapman does not suffer from glaucoma or diabetic retinopathy, the cataract in Chapman's right eye is not a medical emergency or medically necessary.[5]  Dkt. 53-1, p.4.  To date, Chapman has not received cataract surgery in his right eye.

---

[5] At the time of the District Court proceedings, Wexford held the contract with the ADOC to provide healthcare to Alabama inmates.  Dkt. 53-1, p.2.

## II.  Course of Proceedings and Disposition Below

### A. Chapman sues defendants pursuant to 42 U.S.C. § 1983, and the Magistrate Judge screens his complaints.

Chapman filed an original complaint pursuant to 42 U.S.C. § 1983 against six defendants—Jefferson Dunn, Ruth Naglich, Michele Sagers Copeland, Charlie Waugh, Mary Cooks, and Corizon—on December 23, 2019.[6]  Dkt. 1.  The Magistrate Judge assigned to the case screened this complaint and ordered Chapman to file an amended complaint.  Dkt. 7, p.4.  Chapman complied and filed an amended § 1983 complaint against the same defendants generally alleging that they showed deliberate indifference to his medical needs by failing to respond to sick calls, grievances, and grievance appeals related to an ear infection, to perform post-cataract surgery clean-up on his left eye, and to perform cataract surgery on his right eye.  Dkt. 10-1, p.1-6.  Chapman also asserted state law claims sounding in negligence and

---

[6] A pro se inmate's filing is deemed filed on the date that he signs, executes, and delivers his petition to prison authorities for mailing.  *See Adams v. United States*, 173 F.3d 1339, 1341 (11th Cir. 1999).

medical malpractice against defendants Waugh, Copeland, and Corizon. *See*

*generally* Dkts. 10; 56, p.29-30.

### B. The Magistrate Judge orders defendants to produce special reports and medical records, and defendants partially comply.

The Magistrate Judge screened Chapman's amended complaint and

ordered defendants to file an answer and a written report containing

affidavits and sworn statements of all defendants regarding the subject

matter of the amended complaint and setting forth all their defenses.

Dkt. 11, p.1-3. This notice did not inform Chapman that these reports would

be considered for summary judgment. *See generally id*. Defendants Corizon,

Copeland, and Waugh timely submitted a special report and answer but

failed to set forth their own affidavits regarding the subject matter of the

amended complaint. Dkts. 13, 17.[7]

On July 22, 2020, the Magistrate Judge ordered defendants Dunn and

Cooks to show cause for their failure to file an answer or otherwise respond

to the amended complaint and ordered ADOC to inform the Court whether

_____

[7] These defendants instead submitted a declaration from Corizon's General
Counsel stating Copeland and Waugh's employment dates. Dkt. 13-1.

it would accept service and provide representation for defendant Naglich. Dkt. 23. Defendants Dunn, Cooks, and Naglich answered the amended complaint and filed a special report but again failed to include their own affidavits regarding the allegations in the amended complaint. Dkts. 24, 29. On July 28, 2020, the Magistrate Judge ordered defendants Dunn, Cooks and Naglich to file a supplemental special report containing their affidavits or sworn statements regarding their knowledge of the allegations in the amended complaint. Dkt. 32. Defendants Dunn, Cooks and Naglich timely complied and filed their own affidavits. Dkts. 35; 35-1; 35-2; 35-3.

On August 14, 2020, the Magistrate Judge ordered Chapman to file a response to the defendants' answers, special reports, and supporting materials. Dkt. 36. The Magistrate Judge stated that it would consider these special reports and supporting evidentiary material as motions for summary judgment. *Id*. at 2. After being granted extensions, Chapman timely filed

his response on January 28, 2021, containing a detailed factual narrative of the issues raised in his amended complaint. *See generally* Dkt. 43.[8]

On June 1, 2021, Chapman moved for the defendants to produce documents and information regarding the allegations in his amended complaint. Dkt. 44. The Magistrate Judge granted Chapman's motion, ordering defendants to respond or object to Chapman's discovery requests. Dkt. 45. Defendants responded to the discovery requests and produced some of Chapman's medical records. *See generally* Dkt. 46. Chapman moved for further production of documents. Dkt. 48. The Magistrate Judge denied the motion but ordered defendants Copeland and Waugh to submit affidavits and sworn statements regarding the subject matter of the amended complaint. Dkt. 49, p.1-2. Defendants Copeland and Waugh both submitted declarations stating they had no knowledge of the issues raised in Chapman's complaint. Dkts. 50-1, p.2; 51-1, p.2.

---

[8] Chapman also attached 23 exhibits to this filing. Because many of these exhibits are medical records that were submitted in other docket entries, Appellant has not included them in Appellant's Appendix.

On October 5, 2022, the Magistrate Judge ordered defendants to submit in chronological order copies of Chapman's medical records regarding the treatment provided to him for his sinus and ear-related infections, issues, problems, or other medical related concerns between June 1, 2017, and January 1, 2018.  Dkt. 52, p.1.  The Magistrate Judge furthered ordered defendants to file an affidavit from a medical care provider interpreting the medical records and to file a supplemental affidavits, including relevant medical records and an accompanying affidavit from a medical provider interpreting these medical records, addressing Chapman's "allegation that he has not received post-cataract surgery clean-up for his left eye causing his vision to steadily get worse and that he has not received cataract surgery for his right eye which he was approved for in 2016/2017." *Id*. at p.1-2.  The Magistrate Judge gave Chapman 14 days to respond to defendants' written reports.  *Id*. at p.2.

The defendants submitted a declaration of Dr. Hugh Hood, the Regional Medical Director for Wexford.  Dkt. 53-1, p.2-4.  Dr. Hood's initial

declaration contained 125 pages of scanned medical records.  *Id*. at p.5-130.[9]

However, these records were not submitted in chronological order per the

Court's prior order.  *See generally* Dkt. 53-1.  Dr. Hood's declaration also did

not address Chapman's allegations regarding post-cataract surgery cleanup

on his left eye.  *Id.* at p.2-4.

On November 2, 2022, the Magistrate Judge again ordered defendants

to submit Chapman's medical records in chronological order, even if

previously submitted, provide an affidavit from a medical provider that

"**interprets the medical records as specifically requested**" (emphasis

original), and submit supporting affidavits addressing allegations that Mr.

Chapman "**has not received post-cataract surgery clean-up for his left eye**

**causing his vision to steadily get worse**."  Dkt. 54, p.1 (emphasis original).

The order gave Chapman only 14 days to respond to defendants'

submission.  Dkt. 54, p.2.  On November 16, 2022, defendants submitted

---

[9] These records and other medical records were not filed under seal.

another declaration from Dr. Hood but only attached 29 pages of Chapman's medical records.  Dkt. 55-1.

### C. The Magistrate Judge issues an R&R.

On February 9, 2023, without further order, the Magistrate Judge issued an R&R recommending that summary judgment be granted in favor of all defendants and that the case be dismissed with prejudice.  Dkt. 56, p.30. The R&R further declined to exercise jurisdiction over any supplemental state law claims against Copeland, Waugh, and Corizon.  Dkt. 56, p.29.  The Magistrate Judge again gave only two weeks, until February 23, 2023, for parties to respond to the R&R.  *Id*. at p.30.

### D. The District Court stays the case as to defendant Corizon, partially adopts the R&R, and enters final judgment pursuant to Federal Rule of Civil Procedure 54(b).

On February 28, 2023, the corporate defendant Corizon filed a notice with the District Court that it had entered Chapter 11 bankruptcy proceedings, pending in the Southern District of Texas.  Dkt. 57, p.1; *see also Tehum Care Servs.*, No. 4:23-bk-90086 (Bankr. S.D. Tex.).  Corizon informed the court that there is, accordingly, an automatic stay as to any judicial proceedings against Corizon.  Dkt. 57, p.1-2.  On March 7, 2023, the District

Court ordered that Chapman's claim against Corizon be stayed until further order of the court. Dkt. 59, p.3. The district court further required Corizon to file a notice on the status of the bankruptcy proceedings every 90 days and to notify it of the conclusion of bankruptcy proceedings. *Id.* To date, Corizon has not filed any notice in the District Court updating the court on the status of the bankruptcy proceedings. *See* Dkt. Sheet.[10]

Also on March 7, 2023, the District Court adopted the R&R as to Chapman's claims against defendants Dunn, Naglich, Cooks, Copeland, Waugh, and John Q. Hamm.[11] It granted summary judgment on federal-law claims as to these defendants and dismissed any supplemental state-law claims without prejudice. Dkt. 60, p.2. The district court further finding "no

---

[10] On January 30, 2024, the district court case was reassigned to a different judge. Dkt. Sheet #80. On February 5, 2024, the reassigned judge administratively closed the case pending the bankruptcy stay. Dkt. Sheet #81.

[11] As Commissioner of ADOC, Hamm was automatically substituted as a defendant in his official capacity. Dkt. 60, p.2. Hamm is the current commissioner of ADOC.

just reason for delay" entered final judgment as to the individual defendants

pursuant to Federal Rule of Civil Procedure 54(b). *Id*. at p.2-3; Dkt. 61.

### E. Chapman's objections to defendants' submissions are entered on the docket after entry of Rule 54(b) judgment.

On March 20, 2023, after partial final judgment had been entered, the

clerk entered Chapman's Response to Defendants Discovery and

Declarations asserting responses and objections to some of defendants' prior

discovery submissions. Dkt. 63. In the Certificate of Service of this

document, Chapman swears that he served this document on November 26,

2022, when he handed the document over for mailing. *Id*. at p.20. Chapman

attached additional medical records, sick call requests, and diagnostic

reports. Dkts. 63-1; 63-2. These filings appear to have been Chapman's

responses to defendants' special reports and submissions and Dr. Hood's

declarations filed in Dockets 53 and 55. However, because final judgment

had been entered, the District Court did not consider these submissions

despite their timely mailing.

### F. Chapman timely files a notice of appeal, and this Court issues a jurisdictional question.

Chapman filed a notice of appeal on March 14, 2023. Dkt. 64, p.4. On April 10, 2023, the District Court denied Chapman's pro se motion for leave to appeal *in forma pauperis*, finding that his appeal was frivolous and not taken in good faith. Dkt. 68, p.1-2. However, on October 20, 2023, this Court ordered that the appeal was not frivolous and granted Chapman's leave to proceed and for appointment of counsel. ECF No. 24. This Court appointed the undersigned counsel on November 6, 2023. ECF No. 25.

Prior to counsel's appointment, this Court issued a jurisdictional question asking the parties to address if the District Court's certification of final judgment pursuant to Federal Rule of Civil Procedure 54(b) was proper. ECF No. 4-2. This Court is carrying that question with this case. ECF No. 20.

### III.  Standard of Review

1. This Court reviews de novo whether the District Court's judgment entered pursuant to Federal Rule of Civil Procedure 54(b) amounted to a final judgment. *Lloyd Noland Found., Inc. v. Tenet Health Care Corp.*, 483 F.3d 773, 778 (11th Cir. 2007). This Court reviews for an abuse of discretion

whether the District Court properly entered final judgment pursuant to Rule 54(b). *Id.*; *Ebrahimi v. City of Huntsville Bd. of Educ.*, 114 F.3d 162, 166 (11th Cir. 1997).

2. This Court reviews de novo a district court's application of the statute of limitations. *Harrison v. Digital Health Plan*, 183 F.3d 1235, 1238 (11th Cir. 1999).

3. This Court reviews de novo a district court's grant of summary judgment on a 42 U.S.C. § 1983 claim, using the same legal standards as the district court and drawing all evidentiary inferences in favor of the nonmoving party. *See Reyes v. Maschmeier*, 446 F.3d 1199, 1202 (11th Cir. 2006).

4. This Court reviews a district court's management of its docket for abuse of discretion. *See Young v. City of Palm Bay*, 358 F.3d 859, 864 (11th Cir. 2004).

## SUMMARY OF THE ARGUMENT

Defendants were deliberately indifferent to Michael Chapman's medical needs. During the summer of 2017, Michael Chapman suffered from an ear infection. He submitted multiple sick call requests and grievances that were deliberately ignored. In August 2017, he was finally seen by defendant Charlie Waugh in a chronic care appointment. But Charlie Waugh refused to treat Chapman *at all*. Five months later, Chapman was found passed out, seizing, and transported for surgery and treatment for mastoiditis, a ruptured ear drum, and a brain abscess. Chapman's medical trials do not end there. Chapman's doctors have persistently recommended that he be given cataract surgery in his right eye. The prison system refuses to perform this surgery.

Multiple legal and procedural errors warrant reversal of judgment for defendants Waugh, in her individual capacity, based on her deliberate indifference to treat Chapman's ear infection, and Hamm in his official capacity, based on ADOC's refusal to treat Chapman for his right-eye cataract.

*First*, the Magistrate Judge improperly calculated when the statute of limitations began to run on Chapman's claim against Waugh.  It was not until January 2018 when Chapman was treated for mastoiditis, a ruptured ear drum, and a brain abscess that Chapman could have reasonably become aware of the extent of his injuries due to Waugh's prior unlawful refusal to treat Chapman for an ear infection.  At minimum, the Magistrate Judge should have tolled the statute of limitations, as Chapman notified the Court in multiple filings that he had had a stroke in July of 2019, that impeded his ability to file his complaint earlier.

*Second*, the Magistrate Judge improperly resolved credibility determinations and granted summary judgment to defendant Waugh when questions of fact existed regarding her deliberate indifference.  Ultimately, Chapman was entitled to have a factfinder weigh his and Waugh's credibility regarding their August 2017 encounter.  And the District Court seemingly applied the incorrect mens rea standard when evaluating Waugh's deliberate indifference—an issue this Court is currently resolving en banc.  Chapman should have his claims remanded to the District Court

to apply the appropriate standard under *Farmer v. Brennan*, 511 U.S. 825 (1994).

***Third,*** the District Court erred granting summary judgment to defendant Hamm in his official capacity. A reasonable trier of fact could determine that ADOC's policy permitting cataract surgery on only one eye violates the Eighth Amendment. And neither sovereign immunity nor qualified immunity protect Hamm from being sued in his official capacity on this claim.

***Fourth,*** the Magistrate Judge and District Court also failed to give Chapman adequate notice that the Magistrate Judge would enter summary judgment in its R&R and otherwise failed to give Chapman adequate time to respond to court orders. Two weeks is not enough time for an incarcerated pro se litigant to respond to court orders. At least one of Chapman's filings was not entered on the docket until six months after Chapman swears he mailed it, indicating that Chapman's filings and objections may not have been properly mailed by prison staff, could have been lost in the mail, or were otherwise delayed for reasons beyond his

control.  Chapman should be given a full opportunity to present his objections to the Magistrate Judge R&R.

This Court has jurisdiction to review these errors.  The District Court entered partial final judgment pursuant to Federal Rule of Civil Procedure 54(b) because the one corporate defendant—Corizon—is in bankruptcy proceedings.  Those proceedings may take years to resolve.  In the meantime, if Chapman were forced to wait to appeal the judgment as to all defendants and if this Court in the future were to determine that reversal as to any defendant was warranted, there is a significant risk that evidence would be lost, witnesses could forget critical information, and Chapman would otherwise be severely prejudiced in litigating his case on any potential remand.  There is also no risk of "piecemeal" litigation or wasting this Court's judicial resources.  The claims against the individual defendants are distinct and involve different legal issues than the claim against Corizon.

Accordingly, this Court should exercise jurisdiction over this appeal and reverse summary judgment as to defendants Waugh and Hamm.

<u>ARGUMENT</u>

**I.   This Court has jurisdiction over this appeal because there was no just reason to delay the entry of final judgment as to the individual defendants.**

As an initial matter, this Court has jurisdiction over this appeal.   A judgment that adjudicates the rights and liabilities of fewer than all parties may be appropriately certified as a final judgment pursuant to Federal Rule of Civil Procedure 54(b).   This Court applies a two-step analysis in determining whether a district court's Rule 54(b) certification was appropriate.   First, the district court's judgment must be "both 'final' and a 'judgment.'"  *Lloyd Noland Found.*, 483 F.3d at 777.   Second, the district court, in an exercise of its "sound judicial discretion," must determine whether there was no just reason for delaying the entry of partial final judgment. *Ebrahimi*, 114 F.3d at 166.

Here, both requirements are met.   The District Court's order indisputably entered a "final" judgment as to the individual defendants. The reasons for entering partial final judgment are apparent from the record and counsel in favor of doing so.   The only corporate defendant is still in pending bankruptcy proceedings with no indication of when those

proceedings will end and the automatic bankruptcy stay will be lifted. If this Court were ever to determine that Chapman has a meritorious claim against defendants Waugh and Hamm and that summary judgment was improper, Chapman runs the significant risk that evidence and individual memories could be lost. Finally, there is no risk that this Court would be resolving similar issues against a similar defendant should Chapman decide to appeal the judgment as to Corizon once the bankruptcy stay is lifted.

**A. The District Court's judgment was an ultimate disposition of all claims against all individual defendants.**

Rule 54(b)'s finality prong "require[s] that a judgment disposes entirely of a separable claim or dismisses a party entirely in order to be considered final." *Lloyd Noland Found.*, 483 F.3d at 779 (internal quotation marks and citation omitted). Prior to issuing final judgment, the District Court expressly stayed the litigation as to the sole corporate defendant. Dkt. 59, p.3. The District Court's March 7, 2023, order resolved claims only as to the individual defendants and entered final judgment in their favor. Dkt. 60, p.2-3. Accordingly, the District Court's order disposed "entirely" of

the claims as to the individual defendants, including defendants Waugh and

Hamm.

**B. This is the unusual case where Rule 54(b) final judgment alleviates the hardship associated with an indeterminate delay caused by Corizon's bankruptcy proceedings.**

Although the circumstances warranting Rule 54(b) certification are

"rare[]," *Ebrahimi*, 114 F.3d at 166, the facts surrounding this case and this

appeal weigh in favor of Rule 54(b) partial final judgment.

There is no indication of when Corizon's bankruptcy proceedings will

end and the automatic stay will be lifted. Chapter 11 bankruptcy

proceedings often go on for years.[12] Corizon only filed for bankruptcy in

February of 2023, its case has been given a complex case designation, and the

proceedings remain ongoing, with over a thousand docket entries,

numerous creditors, and no indication that the proceedings are concluding

soon. *See generally Tehum Care Servs., Inc*, No. 4:23-bk-90086 (Bankr. S.D.

Tex.). Additionally, Corizon has failed to comply with the District Court's

---

[12] *See* United States Courts, *Chapter 11 – Bankruptcy Basics*, https://perma.cc/2Z2E-QMJV.

order (Dkt. 59) to provide 90-day status updates on the bankruptcy proceedings. Chapman is imprisoned and has no easy way to apprise himself of the bankruptcy proceedings and determine if and when those proceedings conclude. If this Court declines to exercise jurisdiction over this appeal, Chapman will be forced to wait an indeterminate amount of time for the bankruptcy proceedings to resolve and will have to rely upon Corizon to update the District Court on the status of the bankruptcy proceedings, which Corizon has so far failed to do.

Because the bankruptcy proceedings may last years, there is a significant risk that evidence may be lost and that witnesses may not be able to recall events in the future. This would prejudice Chapman's ability to pursue his claims in the District Court if this Court were ever to reverse judgment as to defendants Waugh and Hamm. As is set forth more fully in this brief, Chapman has a viable Eighth Amendment claim against Waugh and Hamm and summary judgment as to those defendants was improper. *See infra* at 34-53. There are numerous questions of fact regarding Chapman's August 2017 interaction with Waugh and Chapman's medical

treatment. And Mr. Chapman has a claim for injunctive relief against Hamm to remedy an ongoing constitutional violation.

If this Court finds that the District Court erred entering Rule 54(b) partial final judgment and declines to take up this appeal, then Chapman would need to wait indefinitely for bankruptcy proceedings to conclude. At that point, the District Court would enter final judgment (again) as to all defendants, and Chapman would need to appeal (again). Should this Court then determine that summary judgment as to Waugh or Hamm was improper and remand for a trial, Chapman would face severe prejudice litigating pro se what could become almost decade-old claims. Evidence could be lost, and witnesses could have no recollection of events or could otherwise be unavailable to provide testimony. *See Stoner v. Graddick*, 751 F.2d 1535, 1544 (11th Cir. 1985) ("Over a greater period of time witnesses are more likely to die, documents may well disappear or be destroyed, and memories are much more likely to fade."). The entry of partial final judgment as to the individual defendants alleviates the danger of prejudice to Chapman by enabling him to appeal the claims as to these defendants

quickly and reach a resolution on appeal given that there is no end in sight for Corizon's bankruptcy proceedings.

There is also no risk here that a future panel would be determining similar legal issues against similar defendants. *Cf. Ebrahimi*, 114 F.3d at 166 (noting "historic federal policy against piecemeal appeals." (internal quotation marks and citation omitted)). The R&R found that Chapman's claims as to Corizon could not proceed because Chapman failed to present evidence that Corizon had a policy or custom leading to his alleged constitutional violations. Dkt. 56, p.27. The R&R's holding as to defendants Waugh and Hamm is wholly distinct—concerning the statute of limitations and deliberate indifference. *Id*. at p.9-11, 23-27. If Chapman were to appeal a judgment entered in favor of Corizon, this Court would not be resolving the same issues that are before the Court presently.

**C. It is no issue that the District Court did not state express reasons for finding "no just reason for delay" because those reasons are obvious from the record.**

Even though the District Court's order did not delineate specific reasons for its finding of "no just reason for delay," those reasons are

obvious from the record and did not require an explanation. *See Ebrahimi*, 114 F.3d at 166 ("If the reasons for the entry of the judgment are obvious and remand to the district court would result only in unnecessary delay in the appeal process, we will not require an explanation."). This Court has "never required district courts to explicate their reasoning in every case" ruling on a Rule 54(b) certification, *id.*, and, here, the reasons counseling for an immediate appeal are obvious from the record: the bankruptcy proceedings could take years, Chapman must rely on defendants to know if and when they conclude, and remand to the District Court would only unnecessary delay the appeal as to defendants Waugh and Hamm. Further, witnesses may lose their recollection and evidence could be lost. Chapman is also 60-years old, in poor health, and incarcerated. These factors all weigh in favor of Rule 54(b) partial final judgment.

\* \* \*

This Court should defer to the District Court's Rule 54(b) certification and exercise jurisdiction over this appeal.

## II. Chapman's claims against defendant Waugh were not barred by the statute of limitations.

Chapman filed his original complaint on December 23, 2019.  Dkts. 1, p.43-44; 56, p.4.  While § 1983 actions are subject to the statute of limitations governing state law personal injury actions, federal law determines the time at which a § 1983 claim begins to accrue.  *McDonough v. Smith*, 139 S. Ct. 2149, 2155 (2019); *McNair v. Allen*, 515 F.3d 1168, 1173 (11th Cir. 2008).  In Alabama, the governing limitations on a personal injury action is two years.  Ala. Code § 6-2-38(*l*).  However, as a matter of federal law, "[i]n Section 1983 cases, the statute of limitations does not begin to run until the facts which would support a cause of action are apparent or should be apparent to a person with a reasonably prudent regard for his rights."  *Nance v. Comm'r, Ga. Dep't of Corr.*, 59 F.4th 1149, 1153 (11th Cir. 2023) (citation omitted).  Here, because Chapman could not have reasonably discovered his injuries caused by Waugh's earlier deliberate indifference until at least January 1, 2018, the two-year statute of limitations did not start until that date.  Chapman filed his complaint December 23, 2019, and so his claim as to defendant Waugh was timely filed.

**A. The statute of limitations began to run no earlier than January 1, 2018, when Chapman could have reasonably become aware of his injuries.**

The statute of limitations as to Chapman's deliberate indifference claim against Waugh did not start running until Chapman: (1) knew that he had an injury (here, mastoiditis, a ruptured ear drum, and possibly a brain abscess) and (2) that the injury was caused by a prior act of defendant Waugh. *See McCullough v. United States*, 607 F.3d 1355, 1359 (11th Cir. 2010) ("[T]he statute of limitations begins to run when the plaintiff knows that his injury is connected to some act of those who treated him, even if he does not know the particular acts that resulted in his injury." (cleaned up)); *see also Diaz v. United States*, 165 F.3d 1337, 1339 (11th Cir.1999) (a claim does not accrue if the cause is "not reasonably knowable"); *Waits v. United States*, 611 F.2d 550, 553 (5th Cir. 1980) (finding that statute of limitations did not bar medical malpractice claim under Federal Tort Claims Act where defendant

hospital was responsible for plaintiff's inability to discover facts relevant to his injury).[13]

It is undisputed that Nurse Waugh saw Chapman for a chronic care visit on August 10, 2017, where she did not provide any treatment for an ear infection. Dkt. 53-1, p.3, 61, 78. At that point, because Nurse Waugh refused to treat him, Chapman had no idea of the extent of his infection. He could not have had any idea that he had mastoiditis, a ruptured ear drum, and a brain abscess until January 1, 2018, when he was found unconscious and transported to a hospital for diagnosis and treatment. Dkts. 53-1, p.61, 66; 55-1, p.7. And he could not have had any idea that these new injuries were caused by Waugh's prior failure to treat him for an ear infection. *See* Dkt. 53-1, p.78 (January 3, 2018, medical records stating that an "[e]valuation at the corrective facility indicated that [Chapman] probably had sinus infection

---

[13] All decisions of the former Fifth Circuit handed down prior to October 1, 1981, are binding precedent on this Court. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

and was managed symptomatically" and that "[h]e did not receive any antibiotics while at the corrective facility").

The District Court erred in concluding that the claim against Waugh accrued earlier. The Magistrate Judge concluded that Chapman had not identified facts that could support a finding "that he would not have been aware of any injury" Waugh caused before December 11, 2017, "the most recent date that Waugh could have had any interaction with Plaintiff" before Waugh left Corizon for a period of leave." Dkt. 56, p.10. This conclusion misses the mark. The relevant date is not when Chapman could have last interacted with Waugh; it is when Chapman knew "his injury [was] connected to some act of" Waugh. *McCullough*, 607 F.3d at 1359. Champman did not know about his injuries caused by lack of treatment until they were discovered on January 1, 2018. There was clear evidence submitted by defendants showing that Waugh saw Chapman on August 10, 2017, where Chapman complained about an ear infection, and where Waugh refused to treat him. Dkts. 53-1, p.117; 55-1, p.6. And Chapman's medical records indicate that his mastoiditis and ruptured ear drum were caused by that lack

of prior treatment.  Dkt. 53-1, p.61.  Thus, far from "not demonstrate[ing] that any conduct he attributes to . . . Waugh was the cause of his injury," Dkt. 56, p.10-11, Chapman showed that Waugh refused to treat him, that Chapman's further sick calls and grievances went ignored, resulting in him going untreated for the ear infection for approximately five months, and that he ultimately suffered serious injuries as a result.  Dkt. 53-1, p.61, 78, 117-18, 119-20, 122-25.

In multiple filings, which the Magistrate Judge was required to liberally construe, *see Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998), Chapman argued that the statute of limitations did not accrue until at least January 1, 2018.  Dkts. 10-1, p.4; 43, p.13-14; 48, p.4.  And the defendants themselves seemingly conceded that Chapman's injury occurred no earlier than January 1, 2018.  In their declarations, the defendants testified that "[t]he date upon which the alleged violation occurred which lead to Mr. Chapman's Complaint was, according to Mr. Chapman's Amended Complaint, on January 4, 2018."  Dkts. 50-1, p.2; 51-1, p.2 (same).

The District Court erred in concluding that Chapman's § 1983 claim as to Waugh was time-barred where Chapman's pleadings and submissions raised a more than reasonable basis for concluding that Waugh's conduct in failing to treat Chapman's original ear infection led to his additional injuries first discovered in January 2018.

### B. Alternatively, the statute of limitations was also equitably tolled because a stroke prevented Chapman from timely filing his complaint.

The Magistrate Judge should have also equitably tolled the statute of limitations because Chapman suffered a stroke in July 2019 that impeded his ability to file his complaint earlier. "The general test for equitable tolling requires the party seeking tolling to prove: '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing.'" *Villarreal v. R.J. Reynolds Tobacco Co.*, 839 F.3d 958, 971 (11th Cir. 2016) (citation omitted); *see also Fedance v. Harris*, 1 F.4th 1278, 1284 (11th Cir. 2021) ("Equitable tolling pauses the running of, or tolls, a statute of limitations when a litigant has pursued his rights diligently

but some extraordinary circumstance prevents him from bringing a timely action." (cleaned up)).

In multiple submissions, Chapman alerted the Magistrate Judge that he had a stroke in July of 2019 that impeded his ability for filing his complaint. Dkts. 10, p.4; 43, p.1; 47, p.18-19. Prior to his stroke and January 2018 surgery, Chapman had been diligently pursuing his rights through the prison grievance procedure to get treatment for his ear infection, and those requests for treatment and help were ignored. Dkts. 53-1, p.117-18, 119-20, 122-25. The Magistrate Judge failed entirely to consider equitable tolling and Chapman's stroke, despite Chapman informing the Magistrate Judge in his amended complaint that he had a "major stroke July 6th, 2019 which took 2 or 3 months to rehabilitate" from. Dkt. 10-1, p.4. This was error, and Chapman was entitled to have his claims tolled for the time period he was recovering from his stroke.

## III. Disputes of fact precluded summary judgment as to defendant Waugh.

Because Chapman's Eighth Amendment claim as to defendant Waugh was not time-barred, Chapman was required to show that he had an

"objectively serious medical need" that Waugh was aware of and consciously disregarded. *Gilmore v. Hodges*, 738 F.3d 266, 274 (11th Cir. 2013); *see also Farmer*, 511 U.S. at 834. The Magistrate Judge seemingly presumed that Chapman's medical need was serious, and defendants did not argue otherwise. The only issue, then, as to defendant Waugh, was whether, viewing the evidence in the light most favorable to Chapman and drawing all reasonable inferences in his favor, a factfinder could find that defendant Waugh was deliberately indifferent to Chapman's serious medical need.

But the Magistrate Judge erroneously ignored all of Chapman's evidence, filings, and statements that raised a dispute of fact regarding Waugh's refusal to treat Chapman for a routine ear infection. Instead, the Magistrate Judge erroneously resolved credibility determinations and other questions of fact. Compounding these errors, the Magistrate Judge seemingly applied the wrong mens rea standard from *Farmer*—a question this Court has taken en banc. *See Wade v. Ga. Corr. Health, LLC*, No. 21-14275. At minimum, should this Court find that Chapman's claim as to defendant

Waugh is not time-barred, this Court should reverse and remand for the District Court to apply the appropriate standard once *Wade* is resolved.

**A. The Magistrate Judge erred by only considering the evidence submitted by defendant Waugh and by making credibility determinations.**

The Magistrate Judge erred by only considering the evidence submitted by defendant Waugh and her account of the parties' August 10, 2017, encounter. *See* Dkt. 56, p.24-25. This resulted in the Magistrate Judge failing to view the facts in favor of Chapman and draw all reasonable inferences in his favor. *See Chapter 7 Trustee v. Gate Gourmet, Inc.*, 683 F.3d 1249, 1254 (11th Cir. 2012) (at summary judgment, court "view[s] all evidence and draw[s] all reasonable inferences in favor of the nonmoving party"). Viewing the evidence, a jury could have determined under *Farmer*'s standard, that Waugh's refusal to provide *any* treatment to Chapman for his ear infection constituted deliberate indifference.

The District Court only accepted Waugh's account of her treatment of Chapman—that her examination of Chapman's ears did not reveal any sign of infection. Dkt. 56, p.24. But Chapman, in multiple filings and responses

to defendants' submissions, repeatedly averred that he had demonstrated to defendant Waugh that he had an ear infection and that she refused to treat him. *See* Dkts. 10-1, p.2-3 (Chapman stated that he "had shown Ms. Waugh that puss was coming out both ears"); 43, p.10 (stating that he had puss and blood draining from his ears at night prior to August 2017 visit with Waugh); *id*. at p.10-11 (stating that Waugh was "agitated ...and rude" toward him during chronic care visit and yelled obscenities to him); 47, p.3-4 (again alleging that puss and blood was draining from ears and that Waugh ignored Q-Tips Chapman had swabbed in his ears before appointment and only performed short, cursory look in Chapman's ears).

Even the defendants gave conflicting, contradictory, and incomplete accounts of defendant Waugh's encounter with Chapman, and the factfinder should have been entitled to weigh the defendants' credibility in light of these statements. In an initial declaration, defendant Waugh stated that she was employed by Corizon as a nurse practitioner at Draper Correctional from May 25, 2017 "until Wexford took over on April," but failed to complete that sentence and provide a date of her full employment. Dkt. 50-1, p.2. In

that same declaration, she further testified that she "ha[d] no knowledge as to the issues raised by Mr. Chapman in his Complaint." *Id.* She entirely failed to mention that she saw Chapman on August 10, 2017, for a chronic care appointment. *See generally id.* But defendant Waugh's statements are expressly contradicted by later declarations submitted by Dr. Hugh Hood, the Regional Medical Director for Wexford Health. Dr. Hood testified twice that: "Mr. Chapman was seen on August 10, 2017, in chronic care by Charlie Waugh, CRNP, where Mr. Chapman complained about an ear infection," and the record shows that Nurse Waugh did see Chapman. Dkt. 53-1, p.3; Dkt. 55-1, p.3, 6. Defendant Waugh's prior declaration was either wrong or incomplete, but either way, the Magistrate Judge should not have accepted only Waugh's version of events in light of both Chapman's statements to the contrary and the defendants' own contradictory and incomplete submissions. *See Haygood v. Auto-Owners Ins. Co.*, 995 F.2d 1512, 1516 (11th Cir. 1993) ("Credibility determinations are for the jury.").

## B. The Magistrate Judge erroneously applied a gross negligence standard, contra *Farmer*.

The Magistrate Judge further erred by failing to apply the correct negligence standard. In order to succeed on his Eighth Amendment claim, Chapman must show that: (1) he had an objectively serious medical need and (2) defendant Waugh acted with deliberate indifference to this medical need. *Farmer*, 511 U.S. at 834. The Magistrate Judge seemingly presumed that Chapman's medical need was serious, and the defendants never argued otherwise. The only issue at summary judgment, then, was whether a jury, viewing the facts in the light most favorable to Chapman and drawing all reasonable inferences in his favor, could have determined that Waugh knew that Chapman faced a substantial risk of serious harm from an ear infection and disregarded that risk by failing to treat Chapman at all.

Although the Magistrate Judge recited *Farmer*'s standard, it is clear that the Magistrate Judge applied a standard greater than what *Farmer* dictates. *See* Dkt. 56, p.15-16. *Farmer* could not be clearer: a prison official exhibits deliberate indifference in violation of the Eighth Amendment where she "knows that inmates face a substantial risk of serious harm and

disregards that risk by failing to take reasonable measures to abate it."  511 U.S. at 847.  But the Magistrate Judge seemingly evaluated Chapman's claim under a pre-*Farmer* standard of "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness."  Dkt. 56, p.25 (quoting *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991)).

In any event, this Court is currently resolving en banc the question of what mens rea standard governs Eighth Amendment deliberate indifference claims under *Farmer*.  *See Wade v. Ga. Corr. Health, LLC*, No. 21-14275.  *Farmer* could not be clearer.  If this Court reiterates the *Farmer* standard in *Wade*, then Chapman is entitled to have his claim against Waugh remanded to ensure that the District Court applies the correct deliberate indifference standard.  *See Kearse v. Secretary, Fla. Dep't of Corr.*, 669 F.3d 1197, 1199 (11th Cir. 2011) (remand where district court applied incorrect standard).

### C. A dispute of fact exists regarding *Farmer*'s subjective prong, precluding summary judgment for defendant Waugh.

Under *Farmer*, "[w]hether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual

ways." 511 U.S. at 842. Here, a reasonable factfinder drawing all inferences in Chapman's favor could have concluded that defendant Waugh disregarded a substantial risk to Chapman's health or safety by refusing entirely to treat Chapman for an ear infection in August 2017. Chapman had presented evidence and statements that he made Nurse Waugh aware that he was suffering from an ear infection, that blood and puss was coming out of his ear, that he had been suffering from this infection for approximately three months, and that this infection had gone untreated. *See* Dkts. 10-1, p.2-3; 43, p.10-11; 47, p.3.

It would be obvious to a reasonable factfinder that refusing to treat someone for a long-lasting ear infection is disregard for a substantial risk to an inmate's health and safety. Withholding or delaying treatment from an inmate constitutes deliberate indifference where such delay results in continued pain and further medical complications. *See Brown v. Hughes*, 894 F.2d 1533, 1538 (11th Cir. 1990) ("[A]n unexplained delay of hours in treating a serious injury states a prima facia case of deliberate indifference."); *Aldridge v. Montgomery*, 753 F.2d 970, 972–73 (11th Cir. 1985) (delay in treatment for a

bleeding cut under the eye held actionable); *Hughes v. Noble*, 295 F.2d 495, 496 (5th Cir. 1961) (delay treating broken and dislocated cervical vertebrae was deliberately indifferent). And this denial of medical treatment must be interpreted in the context of Chapman's worsened condition. *See Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1189 (11th Cir. 1994), *overruled in part on other grounds by Hope v. Pelzer*, 536 U.S. 730, 739 n.9 (2002) ("[D]elay in medical treatment must be interpreted in the context of the seriousness of the medical need, deciding whether the delay worsened the medical condition, and considering the reason for delay."). Here, that standard is satisfied as Waugh's refusal to treat Chapman in August 2017 resulted in his ear infection remaining untreated, ultimately resulting in mastoiditis and a ruptured ear drum.

Contra the Magistrate Judge's finding, Waugh's treatment of Chapman was not simply "medical malpractice, misdiagnosis, accidents, or a poor exercise of medical judgment." Dkt. 56, p.26. A prison official acts with deliberate indifference where "she knows that an inmate is in serious need of medical care, but [s]he fails or refuses to obtain medical treatment

for the inmate." *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999) (citation omitted). That is what happened here—Chapman set forth facts, which the Magistrate Judge was required to view in the light most favorable to him—that defendant Waugh refused to look at his ears, was rude and dismissive toward him during their visit, that Chapman showed her clear evidence of an ear infection, and she refused to treat him for what was clearly a long-lasting ear infection. *See* Dkts. 10, p.2-3; 43, p.10-11; 47, p.3. This was not a mere misdiagnosis but "medical care which is so cursory as to amount to no treatment at all." *Mandel v. Doe*, 888 F.2d 783, 789 (11th Cir. 1989).

Ultimately, what transpired between Waugh and Chapman during the August 10, 2017, appointment is a question of fact for the factfinder to resolve, not the Magistrate Judge on summary judgment. *See Farmer*, 511 U.S. at 842; *Marbury v. Warden*, 936 F.3d 1227, 1237 (11th Cir. 2019) ("The Supreme Court has made clear that whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence." (cleaned up)); *Thomas v. Bryant*, 614 F.3d 1288, 1312 (11th Cir.

2010) ("A prison official's deliberate indifference is a question of fact which we review for clear error.").   Chapman set forth evidence laying out a dispute of fact regarding defendant Waugh's failure to provide him medical care.   The Magistrate Judge only credited the defendants' conflicting and incomplete statements regarding Chapman's August 10, 2017, appointment with Waugh.   Waugh herself did not even sign a statement or affidavit admitting she saw Chapman during that appointment, and her previous denial of her visit with Chapman is clearly contradicted by Dr. Hood's affidavits and Chapman's medical records.  Dkt. 55-1, p.3, 6.

Viewing this evidence in the light most favorable to Chapman, a reasonable jury could conclude that Waugh was aware of that Chapman complained of an ear infection and disregarded a serious risk of harm by failing to look at Chapman's ears and provide any treatment and that this led to Chapman's mastoiditis and ruptured ear drum.

## IV. Refusal to perform cataract surgery on Chapman's right eye constitutes deliberate indifference.

Applying the same standard from *Farmer*, ADOC's continued refusal to perform surgery on Chapman's right eye is deliberate indifference.  This

Court should reverse summary judgment as to defendant Hamm in his official capacity.

A reasonable jury could conclude that ADOC continues to refuse cataract surgery to Chapman as a matter of prison policy. Dr. Hood testified that cataract surgery in Chapman's right eye is not medically necessary because he does not suffer from glaucoma or diabetic retinopathy, Dkt. 53-1, p.4, but Dr. Hood has never examined Chapman. Dkt. 63, p.2. Other ophthalmologists who have examined Chapman have continued to strongly recommend that he have surgery in his right eye. Dkt. 53-1, p. 7, 10, 21, 51. These facts would permit a reasonable jury to infer that ADOC has refused, as a matter of prison policy, Chapman's requests for cataract surgery, despite medical recommendations that he receive that procedure.

Other circuits have found that a prison policy only permitting cataract surgery in one eye may constitute deliberate indifference. In *Colwell v. Bannister*, the Ninth Circuit reversed and remanded a district court's summary judgment where a prison's refusal to provide cataract surgery on both eyes was done pursuant to a blanket prison policy. 763 F.3d 1060, 1068-

71 (9th Cir. 2014). The Ninth Circuit determined that a reasonable jury could find that a prisoner was denied cataract surgery in his second eye because the prison had a general policy denying all prisoners cataract surgery in both eyes. *Id*. at 1070. This was enough to create a triable issue of fact as to deliberate indifference. *Id*. Here, there is enough evidence in the record that ADOC continues to deny Chapman surgery in his right eye pursuant to a general prison policy and that this constitutes deliberate indifference of a serious medical need.

Chapman's Eighth Amendment claim against Hamm as to his right-eye surgery is not barred by sovereign or qualified immunity. Hamm is the current ADOC commissioner, and Chapman sought prospective injunctive relief against Hamm in his official capacity to remedy an ongoing Eighth Amendment violation regarding the denial of surgery on his right eye. *See* Dkt. 10, p.4 (seeking surgery on both eyes). Sovereign immunity does not apply to a claim for prospective injunctive relief asserted against Hamm in his official capacity. *Ex Parte Young*, 209 U.S. 123, 155-56 (1908). Likewise, because Hamm is sued in his official capacity on this front, qualified

immunity does not apply.  *See Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012) ("The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." (cleaned up)).  The Magistrate Judge, in its analysis, did not consider Chapman's request for injunctive relief as to Chapman's claim against ADOC's commissioner and erroneously neglected to consider that this claim was not barred by sovereign and qualified immunity.  Dkt. 56, p.11-16.

## V.    The Magistrate Judge and District Court erred by granting summary judgment without giving a reasonable time to respond and in otherwise giving an incarcerated pro se litigant an inadequate amount of time to respond to orders.

Federal Rule of Civil Procedure 56(f) allows a district court to enter summary judgment "on its own" after identifying "material facts that may not be genuinely in dispute" only after "giving notice and a reasonable time to respond."  Although the Magistrate Judge gave notice in August 2020 that it would consider the special reports submitted by defendants as motions for summary judgment, Dkt. 36, p.2, the defendants submitted multiple special

reports over the course of *two years*, until November 16, 2022, Dkt. 55. Without giving Chapman further warning, the Magistrate Judge issued an R&R recommending summary judgment for the defendants on February 9, 2023. Dkt. 56.

This was unreasonable. Prior to this, the Magistrate Judge had been managing a quasi-discovery process with the defendants ordering them to file multiple special reports with supporting declarations. *See generally* Dkts. 11; 45; 49; 52; 54. Defendant's November 2022 report was still incomplete and did not contain all of Chapman's medical records as required by the Magistrate Judge's November 2, 2022, order. *See* Dkt. 54; *compare* Dkt. 53-1 *with* 55-1. Chapman mailed a response to defendants' November 2022 report on November 26, 2022, but, for whatever reasons, Chapman's filing was not entered by the clerk on the docket until March 20, 2023, after final judgment had already been entered. *See* Dkt. 63, p.20.

The Magistrate Judge should have given Chapman a subsequent warning before issuing its R&R. *See Griffith v. Wainwright*, 772 F.2d 822, 826 (11th Cir. 1985) (summary judgment improper where district court failed to

properly advise pro se incarcerated litigant of summary judgment).  In light of the more than two-year discovery process directed by the Magistrate Judge, Chapman, a pro se, incarcerated litigant, would have had no idea that the Magistrate Judge would enter summary judgment after the defendants' incomplete November 2022 submission.  The Magistrate Judge should have entered a simple order apprising Chapman that it was now considering summary judgment and given him an opportunity to respond or ask for more time.  Had the Magistrate Judge done so, it is possible that Chapman would have been able to make sure that his filing in Docket 63 was timely docketed.  But because Chapman could not have been aware that the Magistrate Judge was considering summary judgment at this point, Chapman was prejudiced in being unable to respond to the defendants' final special report.

It was also unreasonable for the Magistrate Judge to give Chapman only two weeks to respond to a 30-page R&R.  Dkt. 56, p.30.  This time is wholly inadequate—Chapman is incarcerated, proceeding pro se, has suffered multiple serious medical issues, and can only receive and respond

to court orders via U.S. mail.  It takes days for Chapman to receive court orders, and he therefore only has days to respond to those orders.  District courts must be "particularly careful to ensure proper notice to a *pro se* litigant."  *Herron v. Beck*, 693 F.2d 125, 127 (11th Cir. 1982).  Here, under the circumstances, two weeks is inadequate to ensure Chapman had proper notice of the R&R and sufficient time to submit objections.

Chapman has steadfastly maintained to undersigned counsel that he objected to the R&R and made other filings that were never entered on the docket.  It is possible that Chapman's filings might have been lost, not mailed, or otherwise inexplicably lost for reasons beyond his control.  *See Garvey v. Vaughn*, 993 F.2d 776, 782 (11th Cir. 1993) ("[P]ro se prisoners must rely on prison authorities, who may be motivated to delay the filing and who control and log prisoners' outgoing mail.").  Moreover, at least one of Chapman's filings was docketed approximately *four months* after it was sent and was never acknowledged or considered by the Magistrate Judge or District Court.  Dkt. 63.  Chapman should have his case remanded so that he

can ensure his mailings are properly docketed and considered in the first instance.

C<small>ONCLUSION</small>

Appellant respectfully requests that this Court exercise jurisdiction over this appeal, reverse summary judgment as to defendants Waugh, in her individual capacity, and Hamm, in his official capacity, and remand to the District Court for further proceedings.

Respectfully submitted,

/s/ Alexis Swartz
Alexis Swartz
L<small>EHOTSKY</small> K<small>ELLER</small> C<small>OHN</small> LLP
408 W. 11th St., 5th Floor
Austin, TX 78701
alexis@lkcfirm.com
512-693-8350

Counsel for Plaintiff-Appellant

CERTIFICATE OF COMPLIANCE

This brief complies with: (1) the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 10,010 words, excluding the parts of the brief exempted by Rule 32(f); and (2) the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface (14-point Palatino Linotype) using Microsoft Word (the same program used to calculate the word count).

/s/ *Alexis Swartz*
Alexis Swartz

CERTIFICATE OF SERVICE

I hereby certify that on March 6, 2024, I electronically filed the foregoing using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/ *Alexis Swartz*
Alexis Swartz